IN THE UNITED STATES DISTRICT COURT
OF THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-cr-30025-1 |
| | ) | |
| DEAN MOWEN, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court are Defendant Dean Mowen's post-trial motions based on Rules 29(c), 33, and 34 of the Federal Rules of Criminal Procedure (d/e 134). For the reasons set forth below, Defendant's post-trial motions are DENIED.

## I. BACKGROUND

On April 6, 2016, a two-count Indictment (d/e 1) was filed in this Court. Count 1 of the Indictment charged Defendants Dean Mowen and David Speer with conspiracy to commit mail fraud. Count 2 charged Defendants Mowen and Speer with mail fraud. On August 11, 2016, Defendant Speer appeared before United States Magistrate Judge Tom Schanzle-Haskins and pleaded guilty to

Count 1 of the Indictment. On September 2, 2016, the Court accepted Defendant Speer's guilty plea and adjudged him guilty of the offense alleged in Count 1 of the Indictment.

On January 10, 2017, Defendant Mowen went to trial on both counts of the Indictment. The jury heard testimony from numerous witnesses for the Government, including Defendant Speer, Danny Tally (an unindicted co-conspirator), Fred Perritt (another unindicted co-conspirator), Kip Herron, Wayne Carlisle, Carl Carlisle (Wayne's nephew), Bill Wiewel (Defendant Mowen's insurance agent), Larry Wyatt (an investigator for Grinnell Mutual), Chris Byers (an insurance adjustor for Grinnell Mutual), and Nick Hiland (an agent with the West Central Illinois Task Force). Among others, Defendant Mowen and his fiancée, Jamie Andino, testified for the defense. On January 17, 2017, the jury found Defendant Mowen guilty of both mail fraud and conspiracy to commit mail fraud.

On January 24, 2017, without having the benefit of the trial transcripts, Defendant Mowen filed post-trial motions based on Rules 29(c), 33, and 34 of the Federal Rules of Criminal Procedure. Defendant Mowen's Rule 29(c) motion requests a judgment of

acquittal, arguing that the evidence on which the jury found him guilty beyond a reasonable doubt of the charged offenses was insufficient. Defendant Mowen's Rule 33 motion requests a new trial and is also based on the insufficiency of the evidence against him, while his Rule 34 motion seeks an arrest of judgment based on the Indictment's failure to charge offenses and the Court's lack of jurisdiction over the offenses charged. As explained below, Defendant Mowen is not entitled to relief on any of his post-trial motions.

## II. ANALYSIS

### A. Defendant Mowen Is Not Entitled to a Judgment of Acquittal.

The Federal Rules of Criminal Procedure provide that a criminal defendant may move for a judgment of acquittal "within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). "A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge." Fed. R. Crim. P. 29(c)(3). Defendant Mowen's Rule 29(c) motion is timely, as it was filed seven days after

the jury rendered its guilty verdicts against him.

In ruling on a motion for acquittal, the Court must determine whether there existed relevant evidence from which the jury could reasonably have found the defendant guilty beyond a reasonable doubt. United States v. Beck, 615 F.2d 441, 447–48 (7th Cir. 1980). In making this determination, the Court must view the evidence in the light most favorable to the Government, keeping in mind that it is the exclusive function of the jury to resolve evidentiary conflicts, determine the credibility of witnesses, and draw reasonable inferences. Id. at 448. The Court must examine all the evidence, including that offered by the defendant. Id. The Court may grant the motion for acquittal only if "no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." United States v. Pree, 408 F.3d 855, 865 (7th Cir. 2005). "Any challenge to the sufficiency of the evidence comes with a heavy, indeed, nearly insurmountable, burden." United States v. Dessart, 823 F.3d 395, 403 (7th Cir. 2016) (internal quotation marks omitted).

To prove the charge of mail fraud, the Government must prove beyond a reasonable doubt that the defendant participated in a

scheme to defraud, that the defendant acted with the intent to defraud, and that the defendant used the United States mail in furtherance of the fraudulent scheme.  United States v. Daniel, 749 F.3d 608, 613 (7th Cir. 2014).  The Government need not prove that the defendant personally used the mail, only that the use of the United States mail in furtherance of the fraudulent scheme was reasonably foreseeable to the defendant and that a mailing was sent in furtherance of the scheme.  Id. at 615.  Further, the Government must prove that the deceptive conduct underlying the fraudulent scheme was "material," meaning that the conduct had a tendency to influence or was capable of influencing the "decision of the decisionmaking body to which it was addressed."  United States v. Seidling, 737 F.3d 1155, 1160 (7th Cir. 2013) (quoting Neder v. United States, 527 U.S. 1, 16 (1999)).  A scheme to defraud requires the concealment of a material fact or the making of a false statement or material misrepresentation.  United States v. Sloan, 492 F.3d 884, 890 (7th Cir. 2007).  The intent to defraud requires a willful act by the defendant "with the specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self or causing financial loss to another."  United States v. Sheneman,

682 F.3d 623, 629 (7th Cir. 2012). Intent to defraud "may be established both from circumstantial evidence and inferences drawn by examining the scheme itself." Id.

To prove the charge of conspiracy to commit mail fraud, the Government must prove beyond a reasonable doubt that a conspiracy to commit mail fraud existed, that the defendant joined the conspiracy with the intent to further the conspiracy, and that at least one conspirator committed an overt act in furtherance of the conspiracy. United States v. Sims, 329 F.3d 937, 943 (7th Cir. 2003). The Government must also prove beyond a reasonable doubt that the use of the United States mail in furtherance of the conspiracy was reasonably foreseeable. Id. at 943 n.3 (citing United States v. Shelton, 669 F.2d 446, 451 (7th Cir. 1982)). Whether the relevant evidence establishes a conspiratorial agreement must be determined by the totality of the circumstances. United States v. Cruse, 805 F.3d 795, 811 (7th Cir. 2015).

Here, the evidence presented at trial, viewed in the light most favorable to the Government, was more than sufficient to support the jury's guilty verdicts against Defendant Mowen on the charges of mail fraud and conspiracy to commit mail fraud. During the

trial, the jury heard testimony that in 2015, Defendant Mowen and Defendant Speer traveled to Walls, Mississippi, where Defendant Mowen purchased a New Holland 8970 tractor and a Case IH 2388 combine from Wayne Carlisle for approximately $32,000. Defendant Mowen subsequently informed his insurance agent, Bill Wiewel, that he had paid $50,000 for the tractor and $58,000 for the combine. Defendant Mowen obtained insurance on the two pieces of equipment for those respective amounts. Had Wiewel known that Defendant Mowen paid approximately $32,000 for the tractor and combine, the two pieces of equipment would not have been insured for a total of $108,000, regardless of the actual value of the equipment, as Defendant Mowen's policy was an actual cash value policy. That actual cash value policy would have reimbursed Defendant Mowen only the amount he paid for the equipment, not the amount he would have had to pay to replace the equipment.

With the insurance for the equipment in place, Defendant Mowen and Defendant Speer agreed that Defendant Speer would set the tractor and combine on fire in an effort to collect the insurance proceeds. Defendant Speer set the tractor and combine on fire on or about October 1, 2015. Shortly thereafter, Defendant Mowen

contacted his insurance agent to make a claim regarding the tractor and combine.

As a result of Defendant Mowen's claim, Camp Point Mutual Insurance Company (Camp Point), requested information and proof of payment with respect to the tractor and combine. Despite the fact that Defendant Mowen had purchased the tractor and combine from Wayne Carlisle, Defendant Mowen and Defendant Speer obtained a bill of sale from Fred Perritt for the tractor and an invoice from Danny Tally for the combine. Jamie Andino, on behalf of Defendant Mowen, subsequently mailed to Camp Point the bill of sale and the invoice, along with a cancelled check, dated September 2, 2015, made out to H.T. Farms, an entity owned by Danny Tally, for $55,000, and a sticky note. The sticky note stated that the cancelled check was for the purchase of the combine and that the bill of sale and invoice were, respectively, from the purchase of the tractor and combine. Camp Point received the documents in the mail.

In arguing that there was insufficient evidence for the jury to convict him, Defendant Mowen asserts that the evidence at trial established that he did not act with the intent to defraud Camp

Point and that he did not conspire with Defendant Speer. In support of these arguments, Defendant Mowen claims that the testimony at trial established (1) that Defendant Mowen did not know that Defendant Speer was present at Defendant Mowen's farm on October 1, 2015; (2) that Defendant Mowen did not know that Defendant Speer set the tractor and combine on fire; and (3) that Defendant Mowen informed Chris Byers of the inaccuracy of the documents submitted to Camp Point.

But the trial testimony on these issues was not one-sided. According to Defendant Speer, Defendant Mowen allowed him to reside in a camper located on Defendant Mowen's property for about six months beginning in the summer of 2015. Further, Defendant Speer testified that he had a conversation with Defendant Mowen about setting the tractor and combine on fire to collect money from the insurance company. Defendant Mowen told Defendant Speer that he did not want the equipment set on fire in one of Defendant Mowen's fields. Defendant Speer later told Defendant Mowen that he was going to set the tractor and combine on fire later that night unless Defendant Mowen told him otherwise—which Defendant Mowen did not do. Defendant Speer

later called Defendant Mowen to inform him that the tractor and combine were on fire.

Defendant Speer was not the only witness who provided testimony contrary to Defendant Mowen's arguments as to what the trial evidence established. Danny Tally testified that both Defendant Speer and Sam Mason, a friend of Defendant Mowen, told him that Defendant Speer was residing on Defendant Mowen's property. Both Larry Byers and Larry Wyatt testified that shortly after the fire, Defendant Mowen told them that Defendant Speer was a hired hand staying on Defendant Mowen's property in a camper. Defendant Mowen admitted that he had written checks to Defendant Speer with the word "labor" written on the memo line. With respect to the fire, although Defendant Mowen admitted that he had seen a text message from Defendant Speer in which Defendant Speer admitted to setting the tractor and combine on fire, Defendant Mowen also testified that he never told the police or Camp Point about this confession.[1]

Defendant Mowen also claims that the trial testimony

---

[1] Defendant Mowen later testified that he tried to tell Larry Byers over the phone about Defendant Speer's confession but the phone cut out and he was unable to subsequently reach Byers.

established that he informed Chris Byers, the insurance adjustor assigned to Defendant Mowen's insurance claim, of the inaccuracy of the documents submitted to Camp Point. Defendant Mowen and Jamie Andino both testified that Defendant Mowen had informed Byers that the invoice, the bill of sale, and the cancelled check Defendant Mowen had did not accurately show what Defendant paid for the equipment or who he bought the equipment from. Both Defendant Mowen and Andino also testified that Byers instructed Defendant Mowen to submit the documentation anyway in order to prove Defendant Mowen's ownership of the tractor and combine. Byers, however, testified unequivocally at trial that he was never informed by either Defendant Mowen or Andino that the documents sent to Camp Point were inaccurate. Byers also testified that he never told Defendant Mowen to send inaccurate documents for the purpose of proving Defendant Mowen's ownership of the tractor and combine. Byers stated that he would never direct an insurance claimant to submit inaccurate materials solely to prove the ownership of damaged equipment.

Further, the testimony of several witnesses suggested that Defendant Mowen intended from the start to send Camp Point

inaccurate documentation with respect to the tractor and combine. Defendant Speer testified that he told Defendant Mowen that Danny Tally might be able to provide receipts for the tractor and combine destroyed in the fire despite the fact that the equipment had been purchased from Wayne Carlisle. Defendant Mowen told Defendant Speer that he had mailed checks to Tally and received a receipt for the combine in return. Defendant Speer informed Defendant Mowen that he would contact Fred Perritt for a bill of sale for the tractor. Nick Hiland testified that his search of the data from Defendant Mowen's cell phone disclosed that Defendant Mowen received a bill of sale from Fred Perritt and sent a text message to Perritt confirming receipt of the bill of sale.

 Defendant Speer's testimony was corroborated by Perritt, who testified that, at the request of Defendant Speer, he e-mailed or faxed a phony bill of sale to Defendant Mowen for the tractor Defendant Mowen purchased from Wayne Carlisle. The information contained on this bill of sale, including the sale price of $50,000, was provided to Perritt by Defendant Speer. Tally also provided corroboration by testifying that he was asked by Defendant Speer to provide a receipt for the combine and eventually did produce the

receipt after receiving a text from Defendant Mowen's phone including the model, serial number, and purchase price of the combine. Tally e-mailed this invoice to Defendant Mowen despite the fact that he had not sold the combine to Defendant Mowen. Tally also testified that Defendant Mowen wrote him a backdated check for $55,000 and that the check was partial payment for two tractors that he had sold to Defendant Mowen, not for the combine.

The evidence presented at trial, viewed in the light most favorable to the Government, was sufficient to find Defendant Mowen guilty of the offenses with which he was charged. Based on this evidence, Defendant Mowen has not met the nearly insurmountable burden of establishing that no rational jury could have found him guilty of mail fraud and conspiracy to commit mail fraud. Defendant Mowen is not entitled to a judgment of acquittal.

**B.     Defendant Mowen Is Not Entitled to a New Trial.**

The Federal Rules of Criminal Procedure state that a court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). If a Rule 33 motion is based on "any reason other than newly discovered evidence," the motion "must be filed within 14 days after the verdict or finding of

guilty." Fed. R. Crim. P. 33(b)(2). Because Defendant Mowen's Rule 33 motion was filed seven days after the jury rendered its guilty verdicts against him, the motion is timely.

In ruling on a motion for a new trial, the Court must consider the weight of the evidence and, in doing so, must consider the credibility of the witnesses. United States v. Washington, 184 F.3d 653, 657-58 (7th Cir. 1999). The Court's consideration of witness credibility in ruling on a motion for a new trial is not contrary to the holding of United States v. Kuzniar, 881 F.2d 466 (7th Cir. 1989), a case cited by the Government in its response to Defendant Mowen's post-trial motions. Washington, 184 F.3d at 657; see also Kuzniar, 881 F.2d at 470-71 (addressing whether the district court abused its discretion in granting a new trial based on the theory that the jury heard testimony the district court found to be "unbelievable as a matter of law" and therefore inadmissible); United States v. Morales, 902 F.2d 604, 608 (7th Cir. 1990), as modified by United States v. Morales, 910 F.2d 467 (7th Cir. 1990) ("[T]he question of admissibility must be separated from that of weight."). In ruling on a motion for a new trial, the Court need not view the evidence in the light most favorable to the Government. Washington, 184 F.3d at

657.

The Court must grant a new trial if the evidence weighs so heavily against the verdict that "it would be a miscarriage of justice to let the verdict stand." Id. at 658; see also Morales, 902 F.2d at 608, as modified by Morales, 910 F.2d 467 ("If the complete record, testimonial and physical, leaves a strong doubt as to the defendant's guilt, even though not so strong a doubt as to require a judgment of acquittal, the district judge may be obliged to grant a new trial."). The granting of a new trial pursuant to Rule 33 is reserved for only the most "extreme cases." United States v. Peterson, 823 F.3d 1113, 1122 (7th Cir. 2016).

Defendant Mowen's motion for a new trial is based on the same ground as his motion for a judgment of acquittal—the insufficiency of the evidence against him. Although the Court's analysis of Defendant Mowen's insufficient-evidence argument is different in determining whether a new trial is warranted than the analysis in determining whether a judgment of acquittal is warranted, given that the standard for granting each motion is different, Defendant Mowen has not established that he is entitled to a new trial.

Certainly the testimony of Defendant Speer can be looked at with some degree of skepticism.  Prior to testifying at trial, Defendant Speer had pleaded guilty to conspiracy to commit mail fraud with Defendant Mowen and interstate transportation of stolen property not involving Defendant Mowen.  Defendant Speer no doubt expected a benefit in return for his testimony against Defendant Mowen.  And several witnesses testified to Defendant Speer's poor reputation in his community with regard to truthfulness.

But, as the Court has noted above, much of Defendant Speer's testimony was corroborated by Fred Perritt, Danny Tally, and others.  Further, Defendant Mowen had credibility problems of his own.  His testimony that Defendant Speer was not living on his property and working on his farm as a hired hand was disputed not only by the testimony of Defendant Speer, but by Defendant Mowen's statements to Larry Byers and Larry Wyatt and the checks Defendant Mowen wrote to Defendant Speer for "labor."  Defendant Mowen's testimony that he had purchased the combine not from Wayne Carlisle, but from an unnamed associate of Danny Tally, was contradicted by Defendant Mowen's statement to Nick Hiland

that he purchased the combine from "Wayne" and was inconsistent with testimony given by Wayne Carlisle, Carl Carlisle, and Kip Herron, the man who transported the combine from Mississippi to Illinois for Defendant Mowen.

In looking at the evidence presented at trial, particularly the testimony set forth above, and assessing the credibility of the trial witnesses, the Court cannot say that the jury verdicts against Defendant Mowen were against the weight of the evidence such that the verdicts are a miscarriage of justice. The record simply does not leave the Court with a strong doubt as to Defendant Mowen's guilt. Defendant Mowen is not entitled to a new trial.

### C. The Court Has No Authority to Arrest Judgment.

Prior to an amendment that went into effect on December 1, 2014, Rule 34 of the Federal Rules of Criminal Procedure required a court to arrest judgment if the court did not have jurisdiction over the charged offense or if the indictment or information did not charge an offense. Fed. R. Crim. P. 34(a) (2013). However, the current version of the Federal Rules of Criminal Procedure provides that a court must arrest judgment only if the court does not have jurisdiction over the charged offense. Fed. R. Crim. P. 34(a) (2016).

The advisory committee notes for Rule 34 state that the December 2014 amendment was meant to conform Rule 34 to Rule 12(b) of the Federal Rules of Criminal Procedure, the latter of which had been amended to remove language that had allowed a court, at any time during the pendency of a case, to hear a claim that an indictment or information failed to state an offense. Fed. R. Crim. P. 34 (2016) advisory committee notes; see also Fed. R. Crim P. 12(b)(3) (2016) (stating that objections based on defects in the indictment or information "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits"). The result is that Rule 34 no longer authorizes a district court to arrest judgment based on the fact that an indictment fails to charge an offense.

The Indictment that charged Defendant Mowen and Defendant Speer was filed on April 6, 2016, long after Rule 34 was amended to remove as a basis for an arrest of judgment that the indictment failed to state an offense. Therefore, the only basis on which the Court can grant Defendant Mowen's Rule 34 motion is a lack of jurisdiction over the charged offenses. Defendant Mowen and Defendant Speer were charged with mail fraud, in violation of 18

U.S.C. § 1341, and conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371. The Court has jurisdiction over these offenses. See 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."). Accordingly, there is no basis for the Court to arrest judgment pursuant to Rule 34. To the extent Defendant Mowen's motion can be construed as one attacking the Indictment pursuant to Rule 12(b)(3), it is untimely.

### III. **CONCLUSION**

For the foregoing reasons, Defendant Mowen's post-trial motions based on Rules 29(c), 33, and 34 of the Federal Rules of Criminal Procedure (d/e 134) are DENIED. Defendant Mowen's sentencing remains set for Monday, May 22, 2017, at 10:00 a.m.

ENTER: May 18, 2017.

*/s/ Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE